DeLuca *v.* Manchester Laundry and Dry Cleaning Company, Inc., Appellant.

Argued January 11, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Peter P. Zion*, with him *Leonard A. Green* and *Lynwood F. Blount*, for defendant, appellant.

*Maurice Freedman*, with him *Herbert H. Hadra* and *Robert H. Arronson*, for plaintiff, appellant.

*Howard R. Detweiler*, with him *Frank R. Ambler*, for defendant, appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, March 14, 1955:

The problem here presented concerns the determination of the proximate cause of the accident in suit.

Mifflin Street, in Philadelphia, is 26 feet wide from curb to curb. It is a one-way street open only for eastbound traffic. The business establishment of defend-

ant Manchester Laundry and Dry Cleaning Company, Inc., is situated on the north side of the street 72 feet east of 11th Street. A loading platform protrudes from the front of its property and extends over the sidewalk 4 feet 2 inches; the sidewalk itself is 12 feet wide. On May 29, 1953, the day of the accident, a truck of the Laundry Company, while the driver was engaged in loading it, was backed up to within a foot of this platform. As the truck was 18½ feet in length it covered the remaining width of the sidewalk and extended an additional 11 feet 8 inches into the roadway, leaving a distance of approximately 14 feet 4 inches between the front of the truck and the south curb of the street. An automobile happened at the time to be parked along the curb on the south side but slightly to the east of the truck.

At about 7:30 in the morning plaintiff, Elvira De-Luca, walking westwardly on the north sidewalk and finding her passage blocked by the truck, stepped out into the roadway in order to proceed around it. The day was clear. She testified that she walked parallel to the side of the truck and at a distance from it of about 5 or 6 feet, that when she came to a line with the front of it she looked and saw an automobile approaching, that she took a step backward, "about a foot or so," but the automobile "came crooked," that is to say swerved toward her and struck her. She (together with her husband) brought suit to recover for her injuries against the Laundry Company and against Charles Chiardio who was the driver of the automobile. Chiardio's version of the accident was entirely different from that of plaintiff. He testified that he was traveling at the rate of only about 15 miles an hour, that he maintained a two-foot clearance as he passed in front of the truck, that he did not change his course but that plaintiff "came out from alongside the laun-

dry [truck] running or walking—I don't know whether she was running or walking, but she came in contact with the left front of my car and sprawled along the left side of the hood, . . ."; he stopped within half the length of his car.

The case was tried by the court without a jury. The trial judge found that Chiardio was not in any manner negligent and that his car did not swerve into the plaintiff; that plaintiff was guilty of a mistake of judgment but not of negligence in coming into contact with the car because she acted while in a perilous position; that the parking of defendant's truck was illegal and was the proximate cause of the accident. Accordingly he found in favor of defendant Chiardio but in favor of the plaintiff against the Manchester Laundry Company in the sum of $3,200. The court en banc dismissed exceptions filed by the Laundry Company to the finding against it, and by both the Laundry Company and the plaintiff to the finding for Chiardio, and entered judgments accordingly. There followed the present appeals by the Laundry Company and the plaintiff.

The court's findings of facts exculpating Chiardio from responsibility for the accident were entirely justified. The trial judge had to choose between the conflicting versions of the accident presented by Chiardio and the plaintiff, and his conclusion, affirmed as it was by the court en banc, must be accepted as a finality. But the appeal of the Laundry Company from the judgment against it must be sustained. In the first place, there is a question whether it was really guilty of a violation of the law in having its truck stand as it did while being loaded. It is true that section 1019(a) of The Vehicle Code of May 1, 1929, P. L. 905, as amended, provides that "in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway, unless a clear and unob-

structed width of not less than fifteen (15) feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon . . .", and that section 1020, as amended, provides that "No person shall park a vehicle, or permit it to stand, whether attended or unattended, upon a highway in any of the following places: . . . 9. on a sidewalk." But "Parking" is defined in section 102, as amended, as "The standing of a vehicle, . . . whether occupied or not, upon a highway *otherwise than temporarily for the purpose and while actually engaged in loading or unloading, . . .*". Accordingly it has frequently been held that it was not intended by the Code to prohibit merely temporary blockings of the highway in the course of the ordinary incidents of traffic or the reasonable necessities of business and industry: *Henry v. S. Liebovitz & Sons, Inc.,* 312 Pa. 397, 401, 167 A. 304, 305, 306; *Fritz, Administratrix, v. York Motor Express Co.,* 358 Pa. 398, 401, 402, 58 A. 2d 12, 13; *Johnson, Administrator, v. Angretti,* 364 Pa. 602, 606, 73 A. 2d 666, 668; *Commonwealth v. Haley,* 25 Del. Co. Rep. 290. In the present case there was no testimony whatever as to the length of time the truck was being loaded prior to the happening of the accident; it may have been in front of the Laundry Company's property only for a few minutes at most.

In the second place, even assuming, arguendo, that the Laundry Company *was* guilty of a violation of the provisions of the statute and therefore negligent per se,[1] such negligence was not a ground of liability unless it was the *proximate and efficient cause* of the accident in question: *Hayes v. Schomaker,* 302 Pa. 72, 77, 152 A. 827, 829; *Hutchinson v. Follmer Trucking*

---

[1] *Jinks v. Currie,* 324 Pa. 532, 188 A. 356; *Landis, Administratrix v. Conestoga Transportation Co. (No. 1),* 349 Pa. 97, 36 A. 2d 465; *Bricker v. Gardner,* 355 Pa. 35, 48 A. 2d 209.

*Company,* 333 Pa. 424, 427, 5 A. 2d 182, 183; *Shakley v. Lee,* 368 Pa. 476, 478, 84 A. 2d 322, 323; *Purol, Inc., v. Great Eastern System, Inc.,* 130 Pa. Superior Ct. 341, 344, 345, 197 A. 543, 544, 545; *Vunak v. Walters,* 157 Pa. Superior Ct. 660, 662, 43 A. 2d 536, 537. This is because an act of negligence which creates merely a passive background or circumstance of an accident does not give rise to a right of recovery if the accident was in fact caused by an intervening act of negligence which is a superseding cause: *Stone v. Philadelphia,* 302 Pa. 340, 153 A. 550; *Schwartz v. Jaffe,* 324 Pa. 324, 332, 188 A. 295, 298; *Kline v. Moyer and Albert,* 325 Pa. 357, 191 A. 43; *Ashworth v. Hannum,* 347 Pa. 393, 397, 398, 32 A. 2d 407, 409; *Venorick v. Revetta,* 152 Pa. Superior Ct. 455, 33 A. 2d 655.

The question, then, is whether the parking of the Laundry Company's truck, even if it *were* a violation of the statute and therefore an act of negligence, was a proximate or only what the law regards as a remote cause of plaintiff's accident. The theory adopted by the court below was that the plaintiff was placed in a position of peril by reason of the blocking of the sidewalk and being compelled thereby to walk out into the roadway; therefore she was not guilty of negligence in what she did but only of an error of judgment. In our opinion the facts do not admit of such an interpretation. Except under unusual circumstances there is certainly no particular "peril" encountered by an *adult* person[2] in walking into the roadway of a street, especially in the present case where the photographs in evidence show Mifflin Street to be a quiet, largely residential thoroughfare, with only one-way traffic.

---

[2] In *Marchl v. Dowling & Co., Inc.,* 157 Pa. Superior Ct. 91, 41 A. 2d 427, relied upon by plaintiff, the victim of the accident was an unattended seven year old child, legally incapable of contributory negligence.

Without some act of negligence on the part of either the plaintiff or Chiardio no accident could or would have resulted, and the Laundry Company was not bound to anticipate such negligence: *Polonofsky v. Dobrosky*, 313 Pa. 73, 76, 169 A. 93, 94; *Leoni v. Reinhard*, 327 Pa. 391, 393, 394, 194 A. 490, 491. Accepting the facts as found by the court below it is clear that plaintiff, walking into the street at a distance of 5 or 6 feet from the side of the truck, proceeded incautiously beyond its front line and ran into Chiardio's car, which was already right upon her; her story that she stepped back and that Chiardio's car veered and swerved into her was rejected by the court. She was therefore guilty of an act of negligence which was the sole cause of the accident. Even if in fact she *had* tried to avoid the impending accident by stepping backward, the emergency which faced her was one due to her own lack of care in proceeding as she did into the center of the highway instead of remaining within the protection of the side of the truck until she saw that no vehicle was approaching; therefore she cannot successfully invoke the principle[3] that an "error of judgment" is excusable if the situation which gives rise to it is not one of the person's own negligent creation.

In *Kline v. Moyer and Albert*, 325 Pa. 357, 191 A. 43, a truck was negligently parked on the highway in the dusk of a late afternoon. A car in which the plaintiff was a guest rider started to pass the standing truck when another automobile coming in the opposite direction swerved from the rear of the truck and struck plaintiff's car in a head-on collision. The question in

---

[3] *Polonofsky v. Dobrosky*, 313 Pa. 73, 169 A. 93; *Silfies, Administratrix, v. American Stores Company*, 357 Pa. 176, 53 A. 2d 610; *Thompson v. Gorman*, 366 Pa. 242, 77 A. 2d 413; *Community Fire Company v. Pennsylvania Power & Light Company*, 92 Pa. Superior Ct. 304.

the case was whether a cause of action could be maintained against the driver of the standing truck or whether his negligence had been superseded by that of the driver of the automobile which struck plaintiff's car. It was held that if the driver of the car saw and knew of the position of the standing truck and nevertheless thereafter proceeded negligently, with the result that the accident occurred, the original negligence of the driver of the truck had become a non-causal factor divested of legal significance; as to it the chain of causation had been broken and responsibility remained solely with the operator of the offending car. The applicable principle was formulated as follows: "Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tortfeasor, and thereafter, by an independent act of negligence, brings about an accident, the first tortfeasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause." In the present case both Chiardio and the plaintiff saw the standing truck of the Laundry Company in plenty of time to guide their movements accordingly and Chiardio did, as the court found, operate his car with all proper care; plaintiff, however, by her own independent act of negligence, brought about the ensuing accident, so that it was her negligence, not the negligence of the Laundry Company (even assuming that there was such negligence) that was the proximate cause of the accident.

Ordinarily the question whether the negligence of a defendant is a proximate cause of the accident is for the fact-finding tribunal (*Landis, Administratrix, v. Conestoga Transportation Company (No. 1)*, 349 Pa. 97, 100, 36 A. 2d 465, 466), but where the relevant facts are not in dispute and the remoteness of the causal connection between defendant's negligence and

plaintiff's injury clearly appears from the evidence the question becomes one of law and, as such, is within the scope of appellate review: *Rugart v. Keebler-Weyl Baking Co.*, 277 Pa. 408, 414, 121 A. 198, 200; *Leoni v. Reinhard*, 327 Pa. 391, 396, 194 A. 490, 492; *Irwin Savings & Trust Company v. Pennsylvania R. R. Co.*, 349 Pa. 278, 283, 37 A. 2d 432, 434; *Frisch v. Texas Company*, 363 Pa. 619, 621, 622, 70 A. 2d 290, 291, 292; *Roche v. Pennsylvania R. R. Co.*, 169 Pa. Superior Ct. 48, 57, 82 A. 2d 332, 337.

The judgment against defendant Manchester Laundry and Dry Cleaning Company, Inc., is reversed and judgment is here entered in its favor. The judgment in favor of defendant Charles Chiardio is affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Elvira DeLuca is a working woman. At the early hour of 7:30 on the morning of May 29, 1953, she was already on the way to her place of employment. Walking westwardly on Mifflin Street on the northern sidewalk, she was confronted in the 1000 block by a huge truck which took up the whole width of the sidewalk and projected into the street 11 feet 8 inches. On the opposite of the 26-foot-wide street, another car was parked. The only way for Mrs. DeLuca to continue on her way was to skirt the side of the truck, go into the middle of the cartway and cut back to the sidewalk beyond the parked barrier. She proceeded to do this but when she got to the middle of the street at a point even with or slightly beyond the front of the parked truck, she was struck by another car going in an eastwardly direction, sustaining serious injuries for which the Court below, sitting without a jury, awarded her a verdict in the sum of $3200. The Court found the Manchester Laundry & Dry Cleaning Company, owners of the truck, guilty of negligence but absolved the

owner of the striking car, Charles Chiardio, of all negligence.

This Court now affirms the verdict in favor of Chiardio and enters a judgment n.o.v. in favor of the Manchester Laundry. The net result of the appeal is to deny Mrs. DeLuca every possibility of compensatory damage for her injuries. This precipitates, as I view it, a phenomenal result. A leviathan of a truck shuts off the only safe lane of travel and appropriates nearly half the width of a narrow street. Another car, on the other side of the street, takes up almost half of the free space still left of the cartway. A third car attempts to squeeze through the remaining tight passage. Because of the interplay of these three vehicles, an innocent pedestrian is knocked down to the street and seriously injured, but, according to the Majority, the parked truck was not negligent, the parked car was without blame, and the moving car was impeccable. The only one at fault was the pedestrian. But what was the pedestrian Mrs. DeLuca to do? Was she to return home because a truck had illegally taken possession of the sidewalk?

In sustaining the verdict of the lower court as to Chiardio, the Majority says: "The trial judge had to choose between the conflicting versions of the accident presented by Chiardio and the plaintiff, and his conclusion, affirmed as it was by the court en banc, must be accepted as a finality."

But the same trial judge, in choosing between the versions of the accident as presented by the Laundry Company and as presented by the plaintiff, decided for the plaintiff. That verdict was also affirmed by the court en banc. Why has the Majority not accepted *that* verdict as a finality? I don't see how the Majority can use one measuring rod when it computes the finality of a verdict which absolves a defendant and a to-

tally different measuring rod when it considers a verdict which convicts a defendant.

Mrs. DeLuca won a verdict against the Laundry Company. The court below heard the evidence and decided in her favor and, as stated above, that verdict was affirmed by the court en banc. This Court has stated almost to the point of monotony that in considering appeals where the plaintiff has won the verdict, we must view the evidence and all inferences to be drawn therefrom in the light most favorable to the plaintiff* Here, however, the Majority varies the monotony by deciding all the inferences *against* the plaintiff. For instance, the Majority says: "In the present case there was no testimony whatever as to the length of time the truck was being loaded prior to the happening of the accident; it may have been in front of the Laundry Company's property only for a few moments at most." But it also may have been in front of the laundry for hours. No one knows how long it was there. Why should the inference be against the plaintiff? The operator of the truck testified that he was unloading. The huge size of the truck would indicate that it could not be unloaded in a "few moments at most."

Sec. 1019 (a) of The Vehicle Code of 1929, P. L. 905, as amended, declares: ". . . In no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway, unless a clear and unobstructed width of not less than fifteen (15) feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon . . ."

The record shows that the laundry truck was so parked as to leave only 14 feet 4 inches between the

---

* *Ashworth v. Hannum*, 347 Pa. 393, 397.

front of the truck and the south curb of the street. The fact that another car was parked on the other side narrowed the "clear and unobstructed width" to a degree considerably less than that allowed by statute. The Majority completely ignores this point in favor of the plaintiff's case by stating that even if the parking of the truck constituted negligence, the parking was not the proximate and efficient cause of the accident. But whether the illegal parking did or did not cause the accident was a matter to be determined by the fact-finding body, and the court below did find that the parking *was* the approximate and efficient cause of the accident. In *Bricker v. Gardner*, 355 Pa. 35, 36, we said: "The defendants contend that the parking was for a purpose allowed by the statute or excepted from its general prohibition. A party claiming such exception or immunity from a general prohibition must bring himself within it; the defendants therefore had the burden of satisfying the jury that the parking was such as was allowed by the statute . . . As the evidence was oral, the ascertainment of the fact was for the jury. . . . It was also suggested that the parking, if unlawful, was not the proximate cause of the accident, that the conduct of the driver of the truck in which the plaintiff was riding was an independent act of negligence constituting the legal cause of plaintiff's injury . . . That evidence also was oral and *necessarily for the jury*."*

In *Marchl v. Dowling & Co.*, 157 Pa. Superior Ct. 91, 94, the Superior Court said: "We are of the opinion that the illegal parking of appellant's truck was a causal and substantial factor in minor plaintiff's injury, and that the intervening act of Bowers was not a superseding cause, although it was a contributing

* Italics throughout, mine.

cause and a proximate factor in the happening of the accident." The Majority disposes of the *Marchl* case by saying that the plaintiff was only 7 years of age and therefore "legally incapable of contributory negligence." But that feature of the case has nothing to do with the matter of proximate cause.

The fact-finding tribunal in the case at bar found Mrs. DeLuca free of contributory negligence. The Majority rejects this finding and declares Mrs. DeLuca guilty of contributory negligence. According to the Majority, Mrs. DeLuca should have remained "within the protection of the side of the truck until she saw that no vehicle was approaching." But unless Mrs. DeLuca stepped out, how was she to see whether a vehicle was approaching? She was not equipped with a periscope to project into the stream of traffic while she remained submerged within the shade of protection of the laundry truck. She could not look *through* the truck. She could not look over it: the plaintiff is 5 feet 3 inches high, the truck was 7 feet 4 inches high. The laundry truck forced this perilous situation upon her. Of course, she could have abandoned her journey entirely by returning home and giving up her day's wages, or she could have remained until the truck in its good time relinquished dominion of the sidewalk, but if she was to proceed on her appointed journey there had to be a moment when she had to look out. Ordinarily it would not happen except once in a hundred times that at the very moment the pedestrian stepped out to look, another vehicle should appear at that very spot at that moment. But it is against that one hundredth chance that those responsible for the perilous situation must take the necessary precautions. Someone on behalf of the Laundry Company should have been available to warn approaching vehicles of pedestrians rounding the truck. Or suitable warning

signs should have been posted. Did the Laundry Company use due care to avoid accident under the circumstances? In my judgment it did not.

The Majority has also exculpated Charles Chiardio, the other defendant, in this respect sustaining the lower court. I do not see how Chiardio can be held blameless. He saw the truck extended into the street, he saw the parked car. He knew that pedestrians would have to come into the street to get around the truck. He knew that with the street clogged by three cars, the free space left for a pedestrian could not be more than a foot or two. He allowed himself only *that* distance for clearance. He testified: "Q. How close to the front of this truck was your car on the left side as you were passing it? A. I would say *better than a foot clearance,* at least, perhaps a two-foot clearance on my driver's side, in order to pass the truck." Was that due care under the circumstances? I do not believe so. His speed was 15 miles per hour. Was that the proper speed under the circumstances? I believe not. Anyone passing a parked truck, knowing that pedestrians may well appear at any moment from behind the truck, should move forward with such slowness as to make a snail envious. Chiardio's negligence, however, was not confined to excessive speed under the circumstances. He not only propelled himself voluntarily into the Skagerrack of danger but he directed his course in such a manner as to intensify the peril to any pedestrian who might appear before him. He testified: "As I said, as I approached the truck I veered slightly toward the right. *When I crossed the street the truck was still in my path.* I veered a little toward the right to pass the truck; I gave myself two feet clearance on my left side in order to pass the truck, but there was no turn." Mrs. DeLuca testified that she saw the car just before she was hit. The lower court made the sig-

nificant observation: "The inference is that if she saw him, *he could see her.* She said she saw the car." This is another inference that the Majority did *not* credit to the plaintiff.

Chiardio also failed to give any audible warning of his approach. As he neared the bottleneck formed by the parked truck and the parked car, it was his imperative duty to blow his horn because it was obvious that if anyone stepped out from behind the truck a collision was inevitable.

The court below, in awarding a verdict to the plaintiff stated that it was the Laundry Company which placed the plaintiff in a position of peril, compelling her to go out into the roadway. Therefore she was not guilty of negligence but, if of anything, only of an error in judgment. The Majority, contesting this conclusion, says that in its opinion "the facts do not admit of such an interpretation." What happens here to the rule that all inferences are to be drawn in favor of the plaintiff? The answer apparently in this case is that it is simply ignored.

In *Thompson v. Gorman*, 366 Pa. 242, 247, we said: "Where the natural result of the negligence of the defendant is to place the person injured in a position of danger, a mistake of judgment by the person injured, in the emergency thus created, does not relieve the defendant of liability, provided the emergency thus created or the position of danger was created by the defendant's negligence." No matter how the case is viewed, the fact remains that the need for the plaintiff to descend into the street would never have arisen had it not been for the blocking of the sidewalk by the truck. And no matter how the case is viewed the fact remains that an innocent pedestrian was injured when two tortfeasors closed in on her like the jaws of a nutcracker.

The Majority says the plaintiff may not recover on the theory of "an error of judgment." If there was no error of judgment on the part of the plaintiff, the same cannot be said, as I view it, on the part of the reviewing tribunal.